DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Bridgette Culver ("Mother") appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division, terminating her parental rights as to her six minor children. We affirm.
In November 1997, Mother had five minor children: Martino Culver, born July 23, 1986; Katina Culver, born December 3, 1988; Marquetta Culver, born December 8, 1989; Tykeisha Culver, born July 25, 1991; and Tre-Von Culver, born March 20, 1995. Each of these children have different fathers, except for Marquetta and Tykeisha, who have the same father.
On November 25, 1997, the Summit County Children's Services Board ("CSB") was granted emergency temporary custody of the children. An adjudicatory hearing was held before the juvenile court on March 17, 1998. On April 6, 1998, the juvenile court found the children to be neglected and dependent and scheduled a dispositional hearing.
A case plan was filed for Mother on April 8, 1998, and was later amended on April 27, 1998 to include the fathers of the children. The amended case plan set the following objectives for Mother: (1) Maintain an environment free from drugs and alcohol; (2) participate in and complete a drug and alcohol assessment and drug counseling, and follow through with all suggested treatment; (3) participate in and complete parenting classes; (4) obtain for herself and her children clean and safe housing, independent of other family members, with working utilities and furnishings; (5) make sure that her children attended school on time on a daily basis; (6) make sure that her children have adequate medical and dental care and that all have received the proper immunizations; (7) participate in a psychological evaluation and a parenting assessment and follow through on all recommendations; (8) attend all scheduled visits with her children; and (9) due to her pregnancy, obtain pre-natal care.
On May 18, 1998, Mother gave birth to Amber Culver; the father was not the father of any of the other children. Amber tested positive for cocaine after birth and exhibited signs of cocaine dependency. CSB moved for emergency temporary custody of Amber two days later, and the juvenile court granted the motion the same day. After an adjudicatory hearing held on July 9, 1998, the juvenile court found Amber to be an abused, neglected, and dependent child. The dispositional hearing was set to be held with that of the other children on July 20, 1998.
After the birth of Amber, the case plan was again amended. The second amended case plan omitted the objective of pre-natal care and added the following objectives for Mother: that she attend weekly Alcoholics Anonymous ("AA") meetings on a regular basis, and provide verification of her attendance; that she maintain contact with her AA sponsor and home group; and that she abstain from all mood-altering chemicals.
The dispositional hearing was held on July 20, 1998. Mother was not present but was represented by counsel. The State introduced the testimony of several persons involved in Mother's case and two of the foster parents that had custody of the children. Mother's attorney did not call witnesses or introduce any evidence. On August 11, 1998, the juvenile court issued its decision and granted permanent custody of the children to CSB. This appeal followed.
Mother asserts one assignment of error:
 THE SUMMIT COUNTY JUVENILE COURT ERRED BY GRANTING THE SUMMIT COUNTY CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY OF TRE-VON CULVER, MARQUETTA CULVER, TYKEISHA CULVER, KATINA CULVER, MARTINO CULVER, AND AMBER CULVER WHERE SUCH ACTION WAS NOT IN THE BEST INTEREST OF THE CHILDREN AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mother argues that there was not clear and convincing evidence to support the juvenile court's finding that permanent custody should be granted to CSB. We disagree.
R.C. 2151.414(B) states that a juvenile court may grant permanent custody of a child to an agency such as CSB if two conditions are met.[1] First, the trial court must find that granting permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). Second, the trial court must find that "[t]he child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[,]" R.C. 2151.414(B)(1), based on an analysis under R.C. 2151.414(E). These findings must be supported by clear and convincing evidence. R.C. 2151.414(B). The appropriate standard of review is whether the juvenile court, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. In re James (Oct. 14, 1998), Summit App. No. 18936, unreported, at 6.
We will first address the issue of whether the children could not have been placed with Mother within a reasonable time or should not have been placed with Mother. Under R.C. 2151.414(E), if a juvenile court makes one of twelve enumerated findings, then the court must find that the child cannot be placed with either parent within a reasonable time or that the child should not be placed with either parent. In the case at bar, the juvenile court found the following R.C. 2151.414(E) factors to be relevant:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
* * *
 (12) Any other factor the court considers relevant.
We will address the second criterion, as it is dispositive of the issue presented.
The juvenile court found that Mother's chemical dependency was such that she was unable to provide an adequate permanent home for the children. At the dispositional hearing, the evidence showed that Mother was a confessed crack cocaine addict, using the drug daily and spending several hundred dollars weekly to support her habit. Persons from several agencies testified that Mother failed to fully complete several substance abuse prevention classes and treatments and the follow-up measures prescribed. Her two youngest children, Tre-Von and Amber, were born addicted to cocaine, and the testimony showed that Mother used crack cocaine during the entire time she was pregnant with Amber. She also told several people, including the children, that it was her intention to relinquish custody of the five older children and try to be reunited only with Amber.
Clear and convincing evidence supported the juvenile court's finding that Mother's substance abuse prevented her from providing an adequate permanent home for the children. Accordingly, the juvenile court did not err by finding that the children could not or should not be placed with Mother.
We now turn to the issue of whether granting permanent custody to CSB was in the children's best interest. In determining the best interest of the child, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The evidence adduced at the hearing supports the juvenile court's finding that granting permanent custody of the children to CSB is in their best interest. As to the first factor, the evidence showed that the children interacted well with one another and had some bond with Mother, but that all of the children except Marquetta had bonded with their foster parents. The guardian adlitem stated that of the four older children who were able to express their wishes, Martino said that he wanted to live with Mother, Katina and Marquetta said that they didn't care whether they lived with Mother, and Tykeisha said that she wanted to live with her foster mother. The children had been in temporary custody of CSB three times since 1992. Tre-Von had spent almost all of his life in foster care, and Amber had been in temporary custody of CSB since birth. The evidence also showed that no other legally secure permanent placement for the children could be found other than with CSB.
The record demonstrates by clear and convincing evidence that the juvenile court did not err when it found that granting permanent custody of the children was in their best interest. Accordingly, Mother's sole assignment of error is overruled.
Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT
BAIRD, P. J.
WHITMORE, J.
CONCUR
[1] R.C. 2151.414 was completely rewritten in 1988 by Am.Sub.S.B. No. 89, rendering this court's decision in In re Lay
(1987), 43 Ohio App.3d 78, (cited by Mother) inapplicable.